# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

TYSHAWN PITTMAN,

                                        Plaintiff,

        v.                                                          5:20-CV-422
                                                                    (GLS/ATB)
SGT./INV. STACEY BILLINGS, et al.,

                                        Defendants.

TYSHAWN PITTMAN, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Tyshawn Pittman. (Complaint ("Compl.") (Dkt. No. 1). Plaintiff has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

## I.   IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2).  After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915

(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. __Complaint__

The Complaint alleges that on July 30, 2019 while plaintiff was incarcerated at the Cortland County Jail ("CCJ"), defendant Investigator Stacey Billings came to visit

him and requested that he provide "specific" information in order to assist in the investigation of criminal activity occurring in CCJ. (Complaint ("Compl.") at 5-6).[1] Plaintiff states that he did not wish to speak with defendant Billings and requested that he be able to contact his attorney. (*Id.* at 6)  Plaintiff claims that defendant Billings tried to "force" the conversation by mentioning plaintiff's pending charges and offering "to strike a deal." (*Id.*)  Plaintiff states that he refused to speak with defendant Billings or take any "deal."  Plaintiff states that he signed a "refusal" and was taken back to the jail from the Sheriff's Building where the interview had taken place. (*Id.*)  Plaintiff states that he called his attorney because defendant Billings told plaintiff that she was going to call his attorney, but she did not do so. (*Id.*)

Plaintiff states that, on July 31, 2019, he received an "ambiguous note" from defendant Captain Nicholas Lynch, telling plaintiff that his inmate account had been "frozen" due to an "on-going criminal investigation." (*Id.*)  Plaintiff states that he began to inquire about this investigation, and on November 25, 2019, he learned through a "news post" that two other inmates from the CCJ had been arrested in conjunction with a criminal investigation that was taking place at CCJ. (*Id.* at 7)  Plaintiff states that he then requested that his account be "unfrozen," but was "denied by both of them"

---

[1] Plaintiff has not numbered the pages of his complaint. Thus, the court will cite to the pages of the complaint as assigned by the court's electronic filing system ("CM/ECF").  The complaint consists of four pages of a form-civil rights complaint that are not consecutively numbered. (Compl. at 1-4).  The form-complaint ends with a list of plaintiff's "Claims" and "Relief Requested." (Compl. at 4).  Plaintiff then attaches what appears to be a letter to the "Northern District Court" dated April 4, 2020, which purportedly contains the relevant facts, in support of the listed claims. (Compl. at 5-9).  Page 9 ends with only part of a sentence.  Finally, plaintiff attaches exhibits to the complaint which appear to be copies of grievances he filed and letters that he received from defendants and others. (Compl. 10-51).

because "they said I was still under a criminal investigation by detective Stacey Billings." (*Id.*)

Plaintiff states that he is "persuaded" that "they seized" his inmate account and "cash" because they "assumed" plaintiff was "aware of a crime," but would not "help their investigation." (*Id.*)  Plaintiff claims that the "seizure of [his] property" was in violation of the Fourth Amendment "along with several other amendments." (*Id.*) Plaintiff states that he was never told the nature of the criminal investigation, nor was he ever charged with a crime or a violation of facility disciplinary rules. (*Id.*) Plaintiff claims that he has tried, "through several officials," to have defendants "relinquish" his account because "they" have illegally seized and kept [his] cash within [his] inmate account." (*Id.* at 8).  Plaintiff alleges that he had $213.30 in his account. (*Id.*)  Plaintiff then states that the defendants actions were taken because plaintiff asked to speak with his attorney when he was first interviewed. (*Id.*)

Plaintiff alleges violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id.*)  Plaintiff states that his property has been "illegally held in custody" by the defendants "because they have violated [his] amendments under a false criminal investigation." (*Id.* at 9).  Plaintiff states that he was released from CCJ on March 5, 2020, but he has still been unable to obtain his money from the facility. (*Id.*)  Plaintiff seeks $30,000.00 damages because he states that each "perpetrator" forced him to be "indigent" for over six months, and he seeks "injunctive relief." (Compl. at 4, 9).  Plaintiff also alleges that he is suing the defendants in their individual and official capacities. (Compl. at 4).

Plaintiff has named three defendants in this action: Stacey Billings, the detective who allegedly initiated the investigation; Captain Nicholas Lynch, CCJ's administrator; and Sergeant "James"/Tyler Burhans, who was involved in the investigation of plaintiff's grievances.  Although the caption of the complaint states that Sergeant Burhans's name is "James," it is clear from the documents attached to the complaint that Sergeant Burhans's first name is Tyler.[2] (Compl. at 20).  The court will direct the Clerk to correct the caption of the complaint to reflect the defendant's proper name. Plaintiff filed grievances regarding this issue, and he has attached the grievance documents, responses from defendants Lynch and Burhans, and other documents. (Compl. at 10-51).

The form-complaint contains three "claims." (Compl. at 4).   The first claim states that plaintiff has been subjected to "unconstitutional condition [sic] of confinement; denial of due process in a disciplinary or other proceeding."  (*Id.*) Plaintiff's second claim states that plaintiff has been denied "equal protection" and has suffered "retaliation for the exercise of a first amendment right." (*Id.*)  Finally, plaintiff's third claim simply lists the following constitutional amendments: "4th Amendment, 5th Amendment, 6th Amendment, 8th Amendment, 11th Amendment, and any other amendment forgotten or unspoken." (*Id.*).

Although plaintiff raises a host of alleged constitutional violations,[3] some of

---

[2] Plaintiff also refers to this defendant as "Tyler Burhans" in the proposed summons for this defendant. (Dkt. No. 2-1).

[3] Plaintiff also states that "each perpetrator are [sic] clearly in violation toward [sic] my first, fourth, fifth, sixth, eighth, fourteenth, and any other amendment that are completely absent and violated because they have deliberately seized my property with-in [sic] any probable cause." (Compl. at 8).  In

them do not apply to his claims, and the court will attempt to sort out any viable claims.

## III.   **Procedural Due Process (Fourteenth Amendment)**

### A.   **Legal Standards**

"[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

### B.   **Application**

Plaintiff claims that defendants deprived him of $213.30.  However, any constitutional procedural due process claim arising from an alleged deprivation of personal property is not cognizable under section 1983 because New York law provides an adequate post-deprivation remedy. *See Jimenez v. Goord*, 205 F.3d 1323, 1323 (2d Cir. 1999) (affirming the district court's judgment dismissing the plaintiff's claim for loss of personal property because New York law provides for post-deprivation remedies); *Ross v. Aramark Corp*., No. 18-CV-2246, 2019 WL 1172383, at *6 (S.D.N.Y. Mar. 13, 2019) (dismissing the pretrial detainee's claim for deprivation of property because New York State provides for an adequate, post-deprivation remedy); *Graham v. NYC Dep't of Corr. Svc*., No. 18-CV-922, 2018 WL 2121593, at *2–3 (E.D.N.Y. May 8, 2018) (dismissing the plaintiff's deprivation of property claim where the plaintiff alleged that officers confiscated his personal clothing because "New York

---

other parts of the complaint, plaintiff does attempt to narrow down the amendment to which he is referring, and the court has attempted to interpret the complaint as liberally as possible to cover the strongest claims that he might be attempting to raise. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

law provides an adequate post-deprivation remedy, and plaintiff has not stated a due process claim for the loss of his personal items").

New York State provides an adequate post-deprivation remedy against the County for loss of personal property in the form of actions for negligence, replevin, and conversion, governed procedurally by New York's General Municipal Law, Ch. 24, Art. 4.  In *Chaney v. City of Albany*, No. 6:16-CV-1185, 2019 WL 3857995, at *13 (N.D.N.Y. Aug. 16, 2019), the court found that a proceeding under Article 78 also constitutes an adequate post-deprivation procedure for an individual who alleged that defendants seized a substantial amount of money that they failed to return.[4] *Id.* (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881–82 (2d Cir. 1996) (citations omitted); N.Y. Civ. Prac. L. & R. 7801).

Plaintiff in this case has not alleged any facts demonstrating that his state remedies are in any way inadequate or inappropriate.  In fact, according to plaintiff, he was only released from custody on March 5, 2020.  He states that he has not been able to get his money back yet, but plaintiff has not even attempted to utilize any state court remedies that would allow him to do so.  Thus, plaintiff's Fourteenth Amendment claim may be dismissed as to the deprivation of property.

---

[4] The court in *Chaney* also cited another Northern District of New York case, holding that "Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government." *Chaney*, 2019 WL 3857995, at *13   (citing *Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 14–15 (N.D.N.Y. 1999) (citing N.Y. C.P.L.R. § 7801)).

IV.   **Unreasonable Seizure (Fourth Amendment)**

A.   **Legal Standards**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The Fourth Amendment specifically protects against "unreasonable" seizures of property. *Mason v. Officer Lax*, No. 3:20-CV-39, 2020 WL 1940667, at *3 (D. Conn. Apr. 22, 2020) (citing *Soldal v. Cook Cty, Ill.*, 506 U.S. 56, 62 (1992)).  "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Id.* (quoting *Soldal*, 506 U.S. at 61) (internal quotation marks omitted).

The determination of whether a seizure is unreasonable involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion and determine whether the totality of the circumstances justified the particular sort of seizure.'" *Id.* (quoting *Carroll v. City of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013)). Thus to state a Fourth Amendment violation, the plaintiff must plausibly allege that the taking of his property was a "seizure," and that the seizure was "unreasonable." *Id.* (quoting *Rothman v. City of New York*, No. 19-CV-0225, 2019 WL 3571051, at *4 (S.D.N.Y. Aug. 5, 2019)).  A Fourth Amendment claim is distinct from a Fourteenth Amendment due process claim because the Fourth Amendment deals with the seizure of the property itself, rather than the defendants' later refusal to return the property, which would be related to the Fourteenth Amendment claim discussed above. *See Fox v. Van*

8

*Oosterum*, 176 F.3d 342, 350-51 (2d Cir. 1999) (citing inter alia *Soldal*, 506 U.S. at 70).

### B.     Application

It is arguable that by freezing the plaintiff's account, the defendants "seized" or "interfered" with plaintiff's right to access his money, and any Fourth Amendment claim would have arisen at that time.  The question of whether such seizure was reasonable must be determined upon further review.  Thus, the court will not recommend dismissing plaintiff's Fourth Amendment claim at this time.

## V.     Equal Protection (Fourteenth Amendment)

### A.     Legal Standards

"To state a viable equal protection claim, a plaintiff generally must allege either 'purposeful discrimination . . . directed at an identifiable or suspect class,' *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995), or that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment." *Barnes v. Fedele*, 760 F. Supp. 2d 296, 301 (W.D.N.Y. 2011) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)) (alteration in original). *See also DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

### B.     Application

Plaintiff merely states in the beginning of his complaint that he was denied his right to equal protection. (Compl. at 5)  However, plaintiff has cited no factual basis for this conclusory statement of law.  Nowhere in plaintiff's complaint does he allege that he was a member of a protected class or that he was treated differently than anyone

who was similarly situated.  Plaintiff seems to be alleging that he and others may have been the subjects of a criminal investigation, and that his prison account was "frozen" because of this investigation.  He does not claim that any other inmate who was the subject of such investigation was treated differently than he was.  Thus, plaintiff does not state a Fourteenth Amendment Equal Protection claim.

## VI.   **Speedy Trial (Sixth Amendment)**

### A.    **Legal Standards**

The Sixth Amendment guarantees the right to a speedy trial. U.S. Const. amend. VI.  "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. Tucker*, No. 1:18-CR-178, 2020 WL 1853488, at *5–6 (W.D.N.Y. Apr. 13, 2020).

### B.    **Application**

In this case, plaintiff complains that his prison account was frozen for approximately seven months while the criminal investigation was underway.  He states that he was never charged with a crime or even charged with facility misbehavior.  He appears to claim that because of the lengthy delay, he was somehow denied his Sixth Amendment rights.  However, the law is clear that, while the Sixth Amendment protects the right to a speedy trial, and once charged, may protect the right to a speedy indictment, the Sixth Amendment does not guarantee a "speedy investigation" or a rapid charging decision. *Id.* (citing *United States v. MacDonald*, 456 U.S. 1, 8 (1982)).

10

Because plaintiff in this case was never charged, his Sixth Amendment rights were not violated by the defendants' alleged conduct.

Plaintiff also states that his Sixth (and Fifth)[5] Amendment rights were violated because he was not told the "basis of the criminal investigation or such crimes." (Compl. at 8). The Sixth Amendment does provide the right to know your accusers and the right to know the "nature of the charges and evidence against you." U.S. Amend. VI. However, plaintiff was never "charged," and therefore, there were no "charges against him." Plaintiff clearly had notice that there was an investigation into conduct occurring at the CCJ because defendant Billings asked him for information regarding an investigation because he begins his complaint by stating that he was visited by defendant Billings, who asked him to provide specific information about activity that was allegedly occurring at CCJ. In addition, plaintiff states that he found out from a news report that two inmates had been arrested in conjunction with an "ongoing" investigation regarding fraud and inmate accounts.[6]

## VII.  Conditions of Confinement

### A.  Legal Standards

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, not by the Cruel and Unusual Punishments Clause of the Eight Amendment. *Darnell v. Pineiro*, 849

---

[5] Plaintiff's only real reference to the Fifth Amendment claim is in the same sentence in which he raises his Sixth Amendment claim, and it is unclear what his basis is for asserting the Fifth Amendment. The court has simply attempted to read the complaint as liberally as possible.

[6] Plaintiff has filed the newspaper article as an additional exhibit to his complaint. (Dkt. No. 6).

F.3d 17, 29 (2d Cir. 2017).  In order to state a section 1983 claim based on

unconstitutional conditions of confinement, a pretrial detainee must satisfy a two

pronged test: "an 'objective prong,' showing that the challenged conditions were

sufficiently serious to constitute objective deprivations of the right to due process, and

a 'subjective prong'-perhaps better classified as a 'mens rea prong' or 'mental element

prong'-showing that the officer acted with at least deliberate indifference to the

challenged conditions." *Id.*

  In order to establish an objective deprivation, under both the Eighth and

Fourteenth amendments, the conditions, either alone or in combination, must pose an

unreasonable risk of serious damage to the inmate's health. *Darnell*, 849 F.3d at 30

(quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).  This includes the risk of

serious damage to "'physical and mental soundness.'" *Id.* (quoting *LaReau v.

MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)).  The court in *Darnell* stated that there

is no "'static test' to determine whether a deprivation is sufficiently serious; instead,

'the conditions themselves must be evaluated in light of contemporary standards of

decency.'" *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing

Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).  Inmates may not be denied their basic

human needs: "food, clothing, shelter, and reasonable safety." *Id.*

  The second prong of the test, the mens rea prong, is also defined objectively and

is established when the pretrial detainee proves that the "defendant-official acted

intentionally to impose the alleged condition, or recklessly failed to act with reasonable

care to mitigate the risk that the condition posed to the pretrial detainee even though the

defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

### B.   Application

Plaintiff alleges that by freezing his inmate account, the defendants also violated the Eighth Amendment.  As stated above, the Eighth Amendment does not apply to pre-trial detainees.  Instead, the objective due process standard articulated in *Darnell* now applies.  However, even under the standard articulated in *Darnell*, the plaintiff is far from stating a due process claim based on the "conditions" of his confinement.

First, it is unclear what conditions plaintiff claims were "unconstitutional." Plaintiff makes reference to the Eighth Amendment at various times.  He refers to the Eighth Amendment when he states that his cash was seized because he exercised the right to speak with his attorney. (Compl. at 8).  While the court will discuss the basis of this claim below under the First Amendment, these facts do not state an "Eighth Amendment" or Due Process claim.  Plaintiff also states that the seizure of his property "without probable cause" was an Eighth Amendment violation. (Compl. at 8).  The court has discussed the deprivation of property under the Fourteenth Amendment above, and such claim is not related to punishment or deliberate indifference.

However, at the end of his complaint, plaintiff states that "each perpetrator has forced me to be indigent over six months, by the hand of cruel and unusual punishment because I have chosen to exercise my own right according to the law . . . ." (Compl. at 9).  Once again, plaintiff seems to associate his retaliation claim with the Eighth Amendment.  Plaintiff simply does not state an Eighth Amendment claim related to

"retaliation."

With respect to his statement that he was kept "indigent" for several months, the plaintiff does not allege that he was denied any basic necessities because he could not use his inmate account.  In fact, the exhibits that he attached to his complaint belie any such allegation.  There are several documents indicating that he asked for items, including soap and socks, and that these items were given to him. (Compl. at 43 (soap), 45 (soap), 46 (soap), 49 (soap and socks), 50 (soap)).  His other exhibits involve questions and grievances regarding his inmate account, but plaintiff does not allege that he lacked for any necessities that would even come close to a *Darnell* due process claim.  Thus, plaintiff's "Eighth Amendment" claims may be dismissed, and the court will discuss plaintiff's retaliation claims under the First Amendment.

## VIII. <u>Retaliation</u>

### A.    **Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).  The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted).  The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action.  *Id.* at 380.  The court must keep in

mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137.

## B.   Application

Plaintiff's strongest argument is that the "defendants" froze his inmate account because he exercised his right not to speak with defendant Billings without contacting his attorney.  The first question is whether plaintiff was engaging in constitutionally protected conduct.  Plaintiff's refusal to answer the investigator's questions regarding the ongoing investigation without speaking to an attorney, or the refusal to answer questions is constitutionally protected conduct. *See Burns v. Martuscillo*, 890 F.3d 77 (2d Cir. 2018) (finding that an inmate had a First Amendment right to refuse to give false information or to become a "snitch" in the future).[7]  The plaintiff in *Burns* also alleged retaliation for the exercise of his First Amendment right, and the Second Circuit conducted an analysis of the issue.  I will assume, for the purposes of this Order and Report-Recommendation, that plaintiff was exercising his First Amendment right to refuse to speak with defendant Billings before he checked with his attorney.

The second factor to consider is whether plaintiff has sufficiently alleged "adverse action" by the defendants.  Although plaintiff claims initially, that defendant

---

[7] The court does note that in *Burns*, the Second Circuit specifically stated that, while a plaintiff had the constitutional right to refuse to give false information or to become an informant in the future, the court was not deciding whether the plaintiff had a First Amendment right to refuse to give truthful information about a past event or in an emergency, 890 F.3d at 93.  The court in *Burns* also stated that it was not undermining the ability to confer a "benefit" on the inmate in exchange for cooperation.  It was only invalidating punishing the inmate for his failure to provide information. *Id.*

Billings tried to "coerce" him into giving her information by raising the issue of his then-current incarceration,[8] when he told defendant Billings that he wished to speak with his attorney, the questioning ceased, plaintiff signed a document refusing to speak, and he was taken back to his housing unit.  He states in the complaint that he called his attorney when he got back to his cell. (Compl. at 6).

The only adverse action plaintiff claims is that he received notice the next day that his inmate account was being frozen "due to an on-going criminal investigation." (*Id.*)  Plaintiff states he was not charged with any crime, nor was he charged with any facility rule violation.  Plaintiff states that his account was frozen for approximately six months and remained frozen even after he was released from CCJ.  Essentially, plaintiff was unable to access his account while he was incarcerated and has been unable to obtain the funds since March 5, 2020 when he was released.

At least one court has stated that the denial of a disbursement request from an inmate's account "arguably constitutes an adverse action for purposes of a retaliation claim since an inmate's ability to access his personal account, even for such things as meeting the needs of his family, is entirely dependent upon the approval of prison officials." *Green v. Sears*, No. 9:10-CV-121, 2013 WL 1081779, at *11 (N.D.N.Y. Feb. 19, 2013), *report and recommendation adopted*, No. 9:10-CV-121, 2013 WL 1081535 (N.D.N.Y. Mar. 14, 2013).  Plaintiff in this case does not state that he asked to use his

---

[8] It is unclear whether plaintiff is trying to say that defendant Billings was offering plaintiff some benefit in his unrelated criminal case in exchange for assistance in her investigation.  Plaintiff states that defendant Billings "tried her best to force a conversation by inquiring about my un-related active case in order to strike a deal with me. And I refused to talk or accept any deal with her . . . ." (Compl. at 6).

money or that he was denied any necessities because he could not pay for them out of his inmate account.  It is questionable in this case that the freezing of plaintiff's account rose to the level of adverse action that would have deterred "a similarly situated individual of ordinary firmness" from exercising his constitutional rights.  However, at this stage of the proceedings, the court is unwilling to make such a determination without further information.

Assuming that freezing plaintiff's account did rise to the level of adverse action, the law is also clear that if the defendants' allegedly retaliatory action would have been taken notwithstanding the constitutionally protected conduct, and in the absence of any improper motive, the retaliation claim will not survive. *Green*, 2013 WL 1081779, at *10.  A review of plaintiff's exhibits shows that he concedes that there was an investigation into fraud involving inmates at CCJ, and that, after an investigation, which was ongoing, two inmates were criminally charged.  Plaintiff has submitted the newspaper article, reporting the charges against the two CCJ inmates.  Plaintiff states that his property was "illegally held in custody by [defendants] because they have violated my amendments under a false criminal investigation." (Compl. at 9). Plaintiff seems to believe that, simply because he was not charged, the investigation was "false." (*Id.*)  Plaintiff's assertion is unsupported in this regard.

However, this at this stage of the proceedings, the court may not engage in a factual determination of whether the defendants would have taken the same action against him in the absence of the exercise of plaintiff's right to refuse to speak with defendant Billings.  Such an issue would be more appropriate after a response by

17

defendants and further development of this case.

Plaintiff's exhibits also show that the defendants Lynch and Burhans were making an effort to resolve the status of plaintiff's account.  In December of 2019, plaintiff asked about his account, and defendant Lynch responded by stating that plaintiff could contact his attorney,[9] but he would have to speak with Investigator Billings. (Compl. at 46).  Plaintiff filed a grievance complaining that defendants Lynch and Burhans were not handling plaintiff's grievances properly. (Compl. at 35, 37). Sergeant Clark[10] reviewed the grievance and determined that neither defendant was acting outside the scope of their duties and that plaintiff's account was frozen due to a "pending" criminal investigation. (*Id.*)

There may also be an issue as to the personal involvement of either defendant Lynch or defendant Burhans that this court cannot determine at this stage of the proceedings.[11]  Plaintiff's exhibits seem to indicate that these defendants were deferring to defendant Billings's investigation each time that plaintiff asked about his account, and that neither of these defendants were necessarily involved in the initial decision to freeze the account.  However, at this stage of the proceedings, the court may not undertake a factual determination because the facts in the complaint must be read

_____

[9] Defendant Lynch simply pointed out that plaintiff had wished to contact his attorney before speaking with the investigator. (Compl. at 46).

[10] Sergeant Clark is not named as a defendant.

[11] Personal involvement in the alleged constitutional violation is required for the assessment of damages in a section 1983 action. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

liberally in the plaintiff's favor.  Thus, the court will recommend that plaintiff's retaliation claim proceed past initial review.  In making this determination, this court makes absolutely no finding that this claim would survive a properly supported dispositive motion.

## IX.   **Municipal Liability**

### A.   **Legal Standards**

A municipality may only be named as a defendant in certain circumstances.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983.  A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35, 131 S. Ct. 447, 452 (2010)), (Rep.-Rec.), adopted in relevant part, 2014 WL 2506217 (E.D.N.Y. June 2, 2014).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Municipal liability may also be shown by establishing that a

policymaking official ordered or ratified the employees' actions either expressly or tacitly.  Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

### B.    Application

Plaintiff states that he is suing the defendants in their individual and "official" capacities.  An official capacity suit against a municipal employee is a suit against the municipality itself.  However, plaintiff in this case has alleged no facts that would state a claim against Onondaga County.  In fact, defendants Lynch and Burhans work at CCJ, while defendant Billings works with the Sheriff's Department.  Plaintiff has not alleged any official "policy" that would be applicable to different departments or any failure to train the defendants in any way.  Thus, any official capacity claims may be dismissed at this time, but the court may afford plaintiff the opportunity to amend this claim.

## X.    Eleventh Amendment

### A.    Legal Standards

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

### B.    Application

It is unclear why plaintiff has asserted an "11th amendment" violation, but clearly, the Eleventh Amendment protects states from being sued in federal court.  It does not protect individual plaintiffs.  In any event, plaintiff has not alleged how he was subjected to an Eleventh Amendment "violation," and this claim may be dismissed with

prejudice.

## XI.   **Opportunity to Amend**

### A.   **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B.   **Application**

As stated above, plaintiff has no claim for the deprivation of property without due process under the Fourteenth Amendment because he has viable state court remedies for such deprivation.  Thus, the court will recommend dismissal without prejudice,[12] but without the opportunity to amend in this case because any such amendment would be futile.

Plaintiff's Eighth Amendment claim may be dismissed without prejudice, but also without the opportunity for amendment.  The 8th Amendment simply does not apply to pretrial detainees, so any amendment would be futile.

Plaintiff's Fifth and Sixth Amendment claims may be dismissed without prejudice, but without leave to amend in this case.  As stated above, plaintiff cannot claim a denial of speedy trial or speedy indictment.  He was never charged with any criminal conduct.  He never spoke to defendant Billings and was thus, not forced to

---

[12] Because the dismissal is without prejudice, plaintiff is free to continue to pursue his state court remedies for the return of his money.

testify or incriminate himself in any way.[13]   Finally, plaintiff's Eleventh Amendment claim must be dismissed with prejudice.

WHEREFORE, based on the findings above, it is

ORDERED, that plaintiff's motion to proceed IFP (Dkt. No. 2) is GRANTED, and it is

RECOMMENDED, that if the District Judge approves this Order and Report-Recommendation, plaintiff's Fourth Amendment unreasonable seizure and his First Amendment retaliation claim against all three defendants proceed, and it is

RECOMMENDED, that plaintiff's Eleventh Amendment claim be DISMISSED WITH PREJUDICE, and it is

RECOMMENDED, that the complaint be DISMISSED WITHOUT PREJUDICE IN ALL OTHER RESPECTS, and it is

RECOMMENDED, that if the District Court approves this Order and Report-Recommendation, the plaintiff be afforded THIRTY (30) DAYS from the date of the District Court's Order to amend his complaint as to his Equal Protection and Municipal Liability, and it is

RECOMMENDED, that if the District Judge approves this Order and Report-Recommendation and plaintiff files an amended complaint, or the time for amendment expires, the matter be returned to me for further orders regarding service, and it is

---

[13] Plaintiff states that he was never told the nature of the crime that he allegedly committed. (Compl. at 7).  However, plaintiff was never accused of committing any crime.  The freezing of his account was associated with a criminal investigation of fraud using inmate accounts.  Thus, any "due process" claim sounding in "notice" and "opportunity" to be heard cannot succeed because he was not accused of committing a crime.

**ORDERED**, that the Clerk is directed to serve this Order and Report-Recommendation on the plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 30, 2020

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**